YARRUT, Judge.
Plaintiffs suit, in forma pauperis, to recover workmen’s compensation for total and permanent disability to perform the duties of a common laborer, was dismissed by the District Court with written reasons. Plaintiff has taken this appeal.
There is no question of Plaintiff’s employment in a hazardous occupation; nor that he suffered an injury while so employed; nor any question of the wages he was earning at the time of injury; nor that he was paid compensation until he was discharged by the treating physicians. The sole question is whether Plaintiff is still totally disabled.
On August 10, 1960, Plaintiff reported to his employer, Defendant-Maloney Carload-ing, Inc., that he had sprained his back while working as a freight handler loading seed bags on a hand truck. He was promptly referred to Dr. John D. Andrews. Dr. Andrews associated Dr. H. R. Soboloff, and both treated Plaintiff until September 27, 1960, when they discharged him as fully recovered and able to return to work.
Dr. Andrews also consulted Dr. Howard Karr, who reported that Plaintiff had no neurological disability. Drs. Andrews, Soboloff and Karr, all agreed that, prior to October 12, 1960, Plaintiff’s injuries were fully cured.
When compensation was discontinued, Plaintiff consulted his attorney, who arranged for examinations by Drs. Byron Unkauf and Max E. Johnson. Upon receipt of reports from Drs. Unkauf and Johnson, Defendants asked the Court in a pre-trial conference, to appoint its own medical expert to examine Plaintiff (as provided by LSA-R.S. 23:1123).
The Court appointed Dr. George C. Bat-talora, Sr., orthopedic surgeon. Dr. Bat-talora made his report and, at the trial,, testified that examinations on two occasions, led him to conclude that Plaintiff could-perform heavy manual labor; suggested Plaintiff was “feigning” complaints of pain;. and made it dear that, during the examinations, Plaintiff responded inconsistently-to various tests performed by him.
The District Judge clearly stated the-issues, the facts he found and his conclusions, which we adopt as our own, viz.:
“It is incumbent upon the plaintiff in a compensation suit to prove his case by a fair preponderance of evidence. The plaintiff in this case, in addition to his own testimony, has produced the-testimony of Dr. Johnson, who is a. neurological expert and psychiatrist, and he has also produced the testimony.of Dr. Byron Unkauf.
“Dr. Johnson testified that his diagnosis was a low back sciatic syndrome,, and he wouldn’t go beyond that. Dr.. Unkauf, from the myelogram and from his physical examination, testified that it was his opinion that the man had a. ruptured intervertebral disc. Dr. Andrews was the treating physician; he-testified that in his opinion the man had. a low back strain, that he placed him in-Flint-Goodridge Hospital in traction,., and in due course he recovered, and discharged him as able to return to work on August 31st. Dr. Andrews referred; *87 Rim to Dr. Karr, and Dr. Karr stated to the Court that he found no disabling injuries, although he examined him on two occasions. He said he had no atrophy, no reflex changes, no neurological changes, and he could find no disability whatsoever; and he placed particular emphasis on the fact that ■the injury is twenty-one months old at the present time and that it would be natural to expect that there be an atrophy because he would be favoring •one side or one limb above the other. Dr. Karr’s findings from examination ■of the myelogram were negative; whereas Dr. Unkauf, by the use of the same myelogram, made positive findings. Dr. Karr also examined him, and 'he found that in his opinion he had no ruptured disc, no tumor. Of course, ■it must be said that Dr. Johnson stated that this sciatic syndrome could have been caused from a lumbo-sacral strain, from a tumor, from inflammation, from .a toxic condition, from diabetes, from a •systemic condition, from peripheral nerve disorder; so, he couldn’t pin this low back syndrome upon necessarily one thing. He said that lumbo-sacral strain was one thing that could cause it. Dr. Battalora, who was appointed by the Court as a result of a pre-trial conference, in an effort to throw some light on the situation, went so far as to testify in his testimony given on the witness stand today that he believed the plaintiff feigned symptoms when he was being examined. His re■port to the Court and his testimony is that the man did not have a ruptured intervertebral disc, does not have a strain, is able to return to work and do heavy manual labor.
“Under these conditions, the medical testimony — and this is purely a medi- • cal case — preponderates in favor of the defendant. The suit will be dismissed . at plaintiff’s cost. There will be a judg-ement accordingly.”
Considering that the three attending physicians, an industrial surgeon, an orthopedic surgeon, a neurosurgeon, and the court-appointed orthopedist, were all unanimously of the opinion that Plaintiff was not disabled beyond the date compensation benefits were terminated, we agree that the findings of fact of the District Court are amply supported by the evidence.
For the above and foregoing reasons, the judgment of the District Court is affirmed; Plaintiff, we think, should be relieved from the payment of all costs. See LSA-C.C.P. Art. 1920.
Affirmed.